THE FORT LEE.

MAGUIRE v. THE FORT LEE, etc.

( District Court, S. D. New York.    December 21, 1885. )

1. COLLISION—WHARVES AND SLIPS—PROJECTING BOATS.
    Vessels moored in slips along-side piers, with bowsprits extending beyond the ends of the piers, in violation of the local regulations, and being in the way of the usual course taken by other vessels accustomed to enter the slip, will be held in fault in case of collision, though the obstruction was visible, and might have been avoided by the other vessel by proper lookout and care.

2. SAME—CASE STATED—FERRY-BOAT—NORTH RIVER.
    The ferry-boat F. L., coming down the North river from Fort Lee to her slip at One Hundred and Thirty-First street, in entering the slip on the strong ebb-tide, going as usual, near the corner of the upper pier collided with the projecting bowsprit of the schooner R. B., moored near the outer end of the pier.    The schooner had been warned to move further back in the slip, and the projection of her bowsprit was contrary to the regulations of the harbormasters.    Held, both vessels in fault,—the schooner for wrongfully remaining in the ferry-boat's way, and obstructing her rightful course; the latter, for not observing the schooner's position, and keeping away from her, as she might have done by a proper lookout and reasonable care.

In Admiralty.
*Goodrich, Deady & Platt*, for libelant.
*E. H. Hobbs*, for claimant.

BROWN, J.    A little after 7 o'clock in the morning of May 17, 1884, as the ferry-boat Fort Lee was coming down the river, and was entering the slip on the south side of West One Hundred and Thirty-First street, her port side, at about the second or third cabin window, came in contact with the bowsprit of the schooner Robert Blair, which was lying bows

out on the northerly side of the slip, injuring both vessels. The libellant contends that the bowsprit did not extend beyond the line of the pier, while the ferry-boat's witnesses contended that it extended some 10 or 15 feet beyond.

The schooner, during the evening before, had been moored outside of another schooner lying along the pier, and had been repeatedly requested to move out of the way of the ferry-boat; and at about 9 P. M. the other schooner was hauled out, and the Robert Blair was moored along-side the dock. The ferry-boat made no subsequent trip that night, and the collision was on her first trip down the next morning. The dock at which she was moored, being a solid dock, causes a very strong current to run across the end of the pier on the ebb-tide. The ferry-boat for this reason is accustomed, in coming down, to run into the slip angling, and close to the southerly corner of the upper pier. There is no doubt, upon the evidence, that the schooner, whether her bows actually projected beyond the line of the pier or not, did obstruct and interfere with the usual course that the ferry-boat was entitled to take upon the ebb-tide. At low tide the schooner was aground as she lay, but at high water could have been moved further back. The weight of evidence, moreover, is to the effect that her bowsprit, after she was brought along-side the pier, did project somewhat beyond its outer end. In either case, she was violating the rules of the harbor-masters, which require both that such vessels shall lie with their bows in, and also so as not to obstruct and interfere with the ferry-boats of the city. There was nothing to prevent the schooner from complying with these regulations, between 9 P. M. and 7 A. M., before the ferry-boat came down; and she had express notice from the ferry-boat not to obstruct her path. The schooner must therefore be held chargeable with fault contributing to the collision.

But the ferry-boat must also be held in fault, because the position of the schooner, her masts, her bowsprit, and jib-boom, were all in plain sight before the ferry-boat reached the pier. If in reality they projected as claimed by the defendants, and as the weight of proof sustains, the bowsprit should have been seen a considerable distance away. It was not noticed until within 50 yards. This indicates a lack of proper look-out. But, if seen in sufficient time to avoid it, I cannot exonerate the ferry-boat on the ground that she was obliged to run close to the corner of the pier as claimed. No doubt that facilitates her entrance; but proceeding a few feet further to the southward could not have caused her any injury, though possibly a little delay and awkwardness in going into the slip.

It is also urged that the schooner's lines were loose, so as to allow her to draw towards the ferry-boat, through the effect of the backwater from the latter. The fact may have been so, but that cannot be admitted to exonerate the ferry-boat. The swaying of the schooner, caused by any slackness of the lines, was but a few feet at most. It was an incident liable to happen. The ferry-boat was bound to give space enough to avoid such contingencies. Both were in fault, and the damages must be divided.